IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Dominic Rashawn Johnson, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 23 C 15683 |
| v. | ) | |
| | ) | Hon. Mary M. Rowland |
| C/O Johnson, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Dominic Rashawn Johnson, formerly an inmate at the Cook County Jail, brings this *pro se* civil rights lawsuit, 42 U.S.C. § 1983, alleging that officers at the jail failed to protect him from an attack by other inmates. Defendants have moved for summary judgment, arguing that: (1) Plaintiff's case should be dismissed with prejudice because he repeatedly and intentionally diverted assets to avoid paying filing fees; (2) Plaintiff's failure-to-protect claim fails because Plaintiff started the fight about which he complains, and Defendants nonetheless responded reasonably to Plaintiff's complaints; and (3) Defendants are entitled to qualified immunity. For the reasons that follow, the motion is granted and the case will be dismissed with prejudice as Plaintiff has not brought forth evidence that Defendants responded unreasonably to a serious risk of harm to him or caused his injuries. Additionally, dismissal with prejudice is warranted as a sanction for litigation misconduct because Plaintiff diverted assets to avoid paying filing fees.

## BACKGROUND

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. The rule is intended "to aid the district court, which does not

have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information, in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (cleaned up). Local Rule 56.1(a) requires the moving party to provide a statement of material facts that complies with Local Rule 56.1(d). LR 56.1(a)(2). Local Rule 56.1(d) requires that "[e]ach asserted fact must be supported by citation to the specific evidentiary material, including the specific page number, that supports it. The court may disregard any asserted fact that is not supported with such a citation." LR 56.1(d)(2).

The opposing party must then respond to the movant's proposed statements of fact. *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005); LR 56.1(e). In the case of any disagreement, "a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003).

Because Plaintiff is proceeding *pro se*, Defendants served him with a Local Rule 56.2 Notice to Unrepresented Litigants Opposing Summary Judgment. (Dkt. No. 90.) Plaintiff was given two opportunities to respond to the motion and did not do so. (*See* Dkt. Nos. 83, 95, 97.) The Court will therefore consider the motion fully briefed. (*See* Dkt. No. 97.)

Because Plaintiff did not respond to the motion, the Court accepts Defendants' factual statements as true to the extent supported by the record. *Lamz*, 321 F.3d at 683. Nonetheless, Plaintiff's failure to comply with Local Rule 56.1 is not a basis for automatically granting Defendant's motion. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the Court

is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The Court will apply these standards in evaluating the evidence.

### B. Relevant Facts[1]

At all relevant times, Plaintiff Dominic Johnson was an inmate at the Cook County Jail. (*See* Defs.' SOF, Dkt No. 87, at pg. 2.) Defendants, Deputy Sheriff Michelle De La Paz, Deputy Sheriff Latanya Greer, Deputy Sheriff Jennifer Johnson, and Deputy Sheriff Marthenia Wiley, are employees of the Cook County Sheriff's Office and at all relevant times worked as correctional officers at the Cook County Jail. (*See id.*)

On Aug. 19, 2023, Plaintiff was a pretrial detainee housed in Division 2, Dorm 2, N-House, a protective custody tier. (*Id.* at ¶¶ 5-6.) Unlike other detainees in the jail, inmates in N-House have no cells and no cellmates. (*Id.* at ¶ 7.) They live and sleep unconfined in a dormitory rather than behind bars. (*Id.* at ¶ 8.)

An open doorway at one end of the dorm leads to the officer's station. (*Id.* at ¶ 9.) There, the tier officer supervises detainees and performs other duties. (*Id.* at ¶ 10.) Nothing precludes detainees from communicating with the tier officer on duty. (*Id.* at ¶ 11.) Plaintiff used that doorway to communicate with an officer at 2:14 p.m. on Aug. 19, 2023. (*Id.* at ¶ 12.) At that time, Plaintiff complained about an incident that occurred in the N-House that afternoon. (*Id.* at ¶ 13.)

Specifically, Plaintiff reported to Officer De La Paz, the tier officer assigned to the 7 a.m. to 3 p.m. shift, that another inmate, Matthew Williams, had just sexually assaulted him in the N-

---

[1] This Court has jurisdiction under 28 U.S.C. § 1331, and venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this claim occurred at the Cook County Jail, which is located in Cook County, within the Northern District of Illinois. (*See* Defs.' SOF, Dkt. No. 87, at pg. 2.)

House bathroom. (*See id.* at ¶¶ 13-18.) Plaintiff testified that he was using the toilet when Inmate Williams entered the bathroom and went into the shower. (*Id.* at ¶ 14; *see* Pl.'s Dep., Dkt. No. 87-1, at 10:19-11:7.) Plaintiff demanded that he leave because he believed Williams to be homosexual. (*Id.*) Williams refused to leave, and according to Plaintiff, he ejaculated on Plaintiff's leg. (*Id.* at ¶ 15; *see* Pl.'s Dep., Dkt. No. 87-1, at 11:8-21.)

Plaintiff left the bathroom, walked to the doorway of the officer's station, found Officer De La Paz, and reported his accusation to her. (*Id.* at ¶¶ 16-18.) Officers cannot change housing assignments. (*Id.* at ¶ 19.) If a detainee wants to be moved, a sergeant must approve his request. (*Id.* at ¶ 20.) Because of this, Officer De La Paz conveyed Plaintiff's complaint to her sergeant. (*Id.* at ¶ 21.) Inmate Williams was then removed from the dormitory. (*Id.* at ¶ 22.)

Later that day, Plaintiff told Officer Greer, the tier officer assigned to the 3 p.m. to 11 p.m. shift, that another inmate, Jerome Dudko, was bullying him. (*Id.* at ¶ 23.) By way of background, Plaintiff contends that Dudko and Jason Walton, another inmate involved in the incident about which he complains, were friends of Williams who were upset about Plaintiff's accusation against him and threatened him because of it. (*See* Pl.'s Dep., Dkt. No. 87-1 at 20:12-22:13.) Officer Greer ordered Dudko to leave Plaintiff alone and threatened to punish him if he disobeyed her order. (Defs.' SOF, Dkt. No. 87, at ¶ 24.) No one bothered Plaintiff for the rest of Greer's shift, and Plaintiff said nothing else to Officer Greer about feeling unsafe or being threatened. (*Id.* at ¶ 25.) Plaintiff went to bed that night and did not tell the tier officer assigned to the overnight shift, 11 p.m. to 7 a.m., that he felt unsafe or threatened. (*Id.* at ¶ 26.)

On Aug. 20, 2023, at approximately 2:33 p.m., Officer Johnson, the tier officer assigned to the 7 a.m. to 3 p.m. shift, was walking around the tier with Officer Wiley, who was assigned to the Dorm 2 desk during that shift. (*Id.* at ¶ 27.) As Officers Johnson and Wiley walked around

4

the tier, Plaintiff played cards with other detainees. (*Id.* at ¶ 28.) The tier appeared calm and stable. (*Id.* at ¶ 29.)

Dudko and another detainee, Jason Walton, were not around Plaintiff. (*Id.* at ¶ 30.) At approximately 2:41 p.m., Dudko spoke with another detainee on the side of the tier opposite the officer's station. (*Id.* at ¶ 31.) At 2:45 p.m., Plaintiff walked in Dudko's direction and stood a few feet away from him. (*Id.* at ¶ 32.) A few seconds later, Plaintiff said something to Dudko and began walking away. (*Id.* at ¶ 33.) Dudko followed. (*Id.* at ¶ 34.)

Dudko and Plaintiff talked in the middle of the tier. (*Id.* at ¶ 35.) Officer Johnson was not present at this time, and Plaintiff did not go to the officer's station. (*Id.* at ¶ 36.) At 2:47:39, Plaintiff followed Dudko to the bathroom, briefly stopping to tie his shoelaces. (*Id.* at ¶ 37.) An argument erupted between Dudko and Johnson at 2:48:15, which caused Officer Johnson to come to the doorway. (*Id.* at ¶ 38.) Plaintiff then told Officer Johnson that Dudko was stealing from him. (*Id.* at ¶ 39.)

At 2:48:39, Officer Johnson called for backup and continued to monitor Plaintiff and Dudko from the doorway. (*Id.* at ¶ 40.) At 2:48:43, Plaintiff yelled something in Officer Johnson's direction. (*Id.* at ¶ 41.) Officers Johnson and Wiley approached Plaintiff and Dudko at 2:48:54. (*Id.* at ¶ 42.) Officer Johnson ordered Plaintiff and Dudko to stop arguing. (*Id.* at ¶ 43.) At 2:48:58 p.m., Dudko turned away from Plaintiff. (*Id.* at ¶ 44.) Walton was nowhere near Dudko at this time. (*Id.* at ¶ 45.)

At 2:48:59 p.m., one second after officers ordered the men to stop arguing, Plaintiff lunged after Dudko and punched him from behind, causing Dudko to fall to the floor. (*Id.* at ¶ 46.) Plaintiff continued punching Dudko as he lay on the floor. (*Id.* at ¶ 47.) Plaintiff ignored officers' orders to stop fighting. (*Id.* at ¶ 48.) At 2:49:04, Walton ran from several feet away

swinging what appeared to be a soap sock. (*Id.* at ¶ 49.) Officers then broke up the fight. (*See* Defs.' Ex. 7, Rear View Video, at 16:16-43.)

Plaintiff has filed eight lawsuits in this court that proceeded to screening under 28 U.S.C. § 1915A: *Johnson v. Dart*, No. 18-cv-8225; *Johnson v. CCSDOC Jail*, No. 19-cv-7631; *Johnson v. Dart*, No. 20-cv-2252; *Johnson v. Dart*, No. 21-cv-0432; *Johnson v. Dart*, No. 23- cv-1338; *Johnson v. Dart*, No. 23-cv-1339; *Johnson v. Ramos*, No. 23-cv-4064; and the instant case, *Johnson v. Johnson, et al.*, No. 23-cv-15683. (*Id.* at ¶ 50.)[2] This Court, which presided over each of these lawsuits, granted Plaintiff leave to proceed *in forma pauperis* in each of those eight cases. (*Id.* at ¶ 51.) Plaintiff has not fully paid the filing fee for any of these eight cases. (*Id.* at ¶ 52.) Plaintiff acknowledged during his deposition that because he knows that money deposited to his trust fund account is subject to the automatic collection mechanism of the Prison Litigation Reform Act, he had money intended for his benefit deposited into the trust accounts of other inmates to avoid paying filing fees. (*Id.* at ¶ 53.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute."

---

[2] The Court administratively terminated a ninth case, *Johnson v. Mays*, No. 23-cv-2843, because the complaint was intended as an amended complaint in a previously filed case.

*Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up). Additionally, when the events in question were preserved on video, the court must view the facts "in the light depicted by the videotape," provided that "[t]here are no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 381 (2007)). There are no such allegations in this case, so the Court will view the facts in the light depicted by the videotaped evidence.

## **ANALYSIS**

Defendants argue they are entitled to summary judgment because: (1) Plaintiff's failure-to-protect claim fails because he started the fight; (2) each Defendant responded reasonably to

7

Plaintiff's complaints; (3) Defendants are entitled to qualified immunity; and (4) Plaintiff's case should be dismissed as a sanction for fraud on the Court.

### A. Merits of Failure-to-Protect Claim

Because Plaintiff was a pretrial detainee at the relevant time, any claim that correctional officers failed to protect him from a serious risk of harm arises under the Fourteenth Amendment's Due Process Clause. *Thomas v. Dart*, 39 F.4th 835, 841 (7th Cir. 2022). A failure-to-protect claim has four elements: (1) the defendant made an intentional decision regarding the conditions of the plaintiff's confinement; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate the risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved, making the consequences of the defendant's inaction obvious; and (4) the defendant, by not taking such measures, caused the plaintiff's injuries." *Id.* (citing *Kemp v. Fulton Cnty.*, 27 F.4th 491, 496 (7th Cir. 2022)).

Defendants first argue that Plaintiff cannot prevail on his failure-to-protect claim because he started the fight by repeatedly punching Dudko after he tried to walk away. Defendants' argument is well-taken. As the Court observed in its initial screening order, Plaintiff acknowledged in his complaint having thrown the first punch, but this is not necessarily dispositive depending on the facts and circumstances of the case. *See Santiago v. Walls*, 599 F.3d 749, 759 (7th Cir. 2010) (reinstating the plaintiff's failure-to-protect claim even though he threw first punch because the plaintiff alleged that warden created by inaction "a situation that inevitably would lead to confrontation and violence").

In *Santiago*, the prisoner plaintiff alleged he was moved into a cell with another prisoner with a history of assaulting his cellmates. *Id.* at 753. The plaintiff sought to be relocated and

complained to the warden that he believed prison guards were deliberately placing him with inmates with whom he was bound to have a confrontation. *Id.* The warden took no action, and the plaintiff was severely assaulted by his cellmate days later. *Id.* The plaintiff acknowledged, however, that he threw the first punch during this confrontation. *Id.* at 759. The Seventh Circuit found that this was not dispositive in light of the plaintiff's allegation that his housing situation with a violent cellmate would inevitably lead to confrontation. *Id.*

By contrast, a failure-to-protect claim may be defeated by plaintiff's having instigated the fight when the plaintiff instigates a physical altercation that he otherwise could have avoided. *See*, *e.g.*, *Reed v. Black*, No. 23 C 14588, 2024 WL 216674, at *2-3 (N.D. Ill. Jan. 19, 2024) (Gettleman, J.) (no failure-to-protect claim where detainee's own allegations showed that he was a willing participant in the fight and escalated the violence by running up on the other inmate before plaintiff was tackled and thrown to the ground); *Gueller v. Shawano Cnty.*, No. 21-C-221, 2022 WL 993532, at *4 (E.D. Wis. Apr. 1, 2022) (Griesbach, J.) (inmate did not have claim for failure-to-protect when he placed himself in harm's way by continuing to "engage and provoke" alleged attacker instead of separating himself from the situation or notifying staff); *Lemmons v. Durant*, No. 10-3030, 2011 WL 4633104, at *4 (C.D. Ill. Oct. 4, 2011) (Baker, J.) (granting summary judgment to officials at detention center where plaintiff twice confronted alleged attacker, including by coming out of his room to do so).

The instant case does not present a situation like *Santiago* where the conflict between Plaintiff and Dudko would "inevitably" lead to violence. Plaintiff was not confined in a cell with Dudko, but rather followed him to the bathroom and continued the confrontation after officers told the men to stop arguing. By the point that physical violence broke out, officers had already responded to the scene and were only a few feet away when Plaintiff threw the first punch at a

man walking away from him. To prevail on his claims, Plaintiff must bring forth evidence that Defendants' actions were the cause of the harm that he suffered, and he has not done so.

Causation has two requirements: (1) the actions complained of must be the "cause-in-fact" of the injury, meaning that the injury would not have occurred absent the conduct; and (2) the act must be the proximate cause of the injury, meaning that it must be the type of injury a reasonable person would see as a likely result of her conduct. *Whitlock v. Brueggemann*, 682 F.3d 567, 582–83 (7th Cir. 2012). Proximate causation requires the court to consider "the relation between an official's conduct and a resulting injury; when, where, and exactly how that injury occurs is part of the proximate cause question." *Id.* at 583. When the plaintiff's injury is caused not by a risk created by the defendant, but by an "unforeseeable intervening act," that act severs the defendant's liability. *Hunter v. Mueske*, 73 F.4th 561, 568 (7th Cir. 2023).

In a somewhat analogous case, the Seventh Circuit in *Hunter* held that the prisoner plaintiff could not prove causation as a matter of law when the fight that caused his injuries happened only after the plaintiff approached his alleged attacker of his own volition, after prison officials had agreed to move the alleged attacker to another cell. *Id.* at 568. *Hunter* held that the defendant officer's failure to separate the two as cellmates was not the cause of the fight because it did not make it any more likely that the plaintiff would seek out interactions with his alleged aggressor. *Id.* at 568–69. Put another way, the plaintiff's deliberate choice to seek out the other inmate was an unforeseeable superseding cause of his injuries because the officer could not have reasonably predicted that the plaintiff would voluntarily approach an inmate that he claimed to fear. *Id.* at 569.

In so ruling, the Seventh Circuit favorably cited *Buckman v. Halsey*, No. 20-13596, 2021 WL 4127067, at *3 (11th Cir. Sept. 10, 2021) (unreported), in which a video recording of the

10

prison dayroom showed that the plaintiff started the fight at issue. *See id.* In *Buckman*, while the plaintiff asserted he had no choice but to attack the other inmate because a fight was imminent, the appeals court affirmed the grant of summary judgment to defendant because the plaintiff had other options, including a guard stationed at the dayroom door to whom he could have gone for help. 2021 WL 4127067, at *3. The appeals court found that the plaintiff's decision to start the fight was an intervening cause of the plaintiff's injuries, and he therefore could not prove causation. *Id.*

The same circumstances exist here. As Defendants point out, Plaintiff could have avoided the fight altogether if he had gone to the officers' station when the men started arguing or if he had walked toward the officers who responded to the scene rather than following Dudko and striking him. At that point, Walton, who battered Plaintiff with the soap sock, was not nearby. Walton ran in from several feet away after Plaintiff struck Dudko and continued to strike him while he was on the ground, ignoring officers' orders to stop fighting. Under the circumstances, Plaintiff has not presented evidence that Defendants' actions were the proximate cause of his injuries, and thus they are entitled to summary judgment.

Additionally, Plaintiff has not brought forth evidence that any of the Defendants responded unreasonably to his complaints. The Fourteenth Amendment does not require a pretrial detainee to prove a defendant's subjective awareness of the risk of harm. *Davis v. Rook*, 107 F.4th 777, 780 (7th Cir. 2024). Rather, the detainee must show that a reasonable officer would have appreciated the risk of harm to the detainee, and that the defendant acted in an objectively unreasonable manner in addressing that risk. *Id.* A defendant's personal knowledge of the risk plays a role in this analysis, however, as the court must assess the reasonableness of the defendant's actions from the perspective of a reasonable officer on the scene, including what

the officer knew at the time. *Id.* (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). To demonstrate that a reasonable officer would have appreciated the risk of harm, "the detainee must show that the defendant actually received all the information about a potential health or safety risk." *Id.* (cleaned up).

As to Officer De La Paz, she reported Inmate Williams' alleged sexual misconduct to her superior officer and *he was removed from the dormitory*. (*See* De La Paz Decl., Dkt. No. 82-7, at ¶¶ 11-12.) According to De La Paz, Plaintiff did not report to her that Dudko or Walton, or anyone else, had threatened him, nor did she observe any threatening behavior. (*Id.* at ¶¶ 13-22.) The evidence in the record indicates that Officer De La Paz responded reasonably to the only specific threat of harm of which she was aware, the incident between Plaintiff and Inmate Williams. Therefore, Officer De La Paz is entitled to summary judgment.

As to Officer Greer, the undisputed evidence is that when Plaintiff told Greer that Dudko was bullying him, she ordered Dudko to leave Plaintiff alone and threatened him with punishment if he disobeyed. After this, Plaintiff said nothing else to Greer about feeling unsafe or being threatened. He went to bed that night and did not tell the tier officer assigned to the overnight shift that he felt unsafe or threatened. Although conflict arose between the men again after her shift, this does not indicate a constitutionally unreasonable response on the part of Officer Greer. In this regard, "[t]he constitutional expectation is that guards act responsibly under the circumstances that confront them, not that they anticipate every potential danger facing a detainee." *Thomas*, 39 F.4th at 842 (cleaned up); *see Silva v. Read*, No. 20 C 50007, 2021 WL 4806386, at *6 (N.D. Ill. Oct. 14, 2021), *aff'd,* No. 21-3029, 2022 WL 4103622 (7th Cir. Sept. 8, 2022) (officer responded reasonably when he de-escalated conflict between inmates, given that

plaintiff did not indicate a continuing threat, and therefore the officer could not be held liable for attack that occurred the next day). Officer Greer is entitled to summary judgment.

Next, as to Officers Johnson and Wiley, the record, including the video evidence, is clear that they responded reasonably to the conflict that arose between Plaintiff and Dudko on Aug. 20, 2023. Specifically, the undisputed evidence is that Officer Johnson came to the doorway when Plaintiff and Dudko began to argue. Plaintiff told Officer Johnson that Dudko was stealing from him, and she called for backup while continuing to monitor the situation. The video evidence shows that fifteen seconds passed between the time that Officer Johnson called for backup and the time that she and Officer Wiley (trailed by another backup officer) approached Plaintiff and Dudko. (*See* Defs.' SOF, Dkt. No. 87 at ¶¶ 40-42; Defs.' Ex. 7, Rear View Video, at 15:39-54.) Seconds after that, Dudko turned to walk away from Plaintiff and Plaintiff punched him. (*See* Defs.' Ex. 7, Rear View Video, at 15:57-16:00).

The case law is clear that officers may permissibly wait for backup before breaking up an altercation. *See Davis*, 107 F.4th at 782 (collecting cases). In any event, Officers Johnson and Wiley responded promptly by any measure, and the altercation escalated to physical violence because Plaintiff chose to strike an inmate who was walking away from him. No reasonable jury could find Officers Wiley and Johnson liable under these circumstances. For all of the foregoing reasons, Defendants are entitled to summary judgment on the merits of Plaintiff's failure-to-protect claim. Because the Court is dismissing this claim on the merits, it need not consider Defendants' alternative argument that they are entitled to qualified immunity.

## B. Litigation Misconduct

Courts have inherent authority to sanction litigants who willfully abuse the judicial process and conduct litigation in bad faith. *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021).

13

"Proceeding *in forma pauperis* is a privilege," not a right. *Lofton v. SP Plus Corp.*, 578 F. App'x. 603, 604 (7th Cir. 2014) (unpublished); *see also Campbell v. Clark*, 481 F.3d 967, 969 (7th Cir. 2007) ("Section 1915 allows, but does not compel, courts to permit destitute plaintiffs to proceed without prepayment of fees."). Intentional concealment of assets in an effort to defraud the Court may justify dismissal with prejudice. *Thomas v. Gen. Motors Acceptance Corp.*, 288 F.3d 305, 307 (7th Cir. 2002). Any sanction must be proportionate to the circumstances. *Langley v. Union Elec. Co.*, 107 F.3d 510, 515 (7th Cir. 1997). Plaintiff having been given an opportunity to respond in writing to the sanctions motion (and having not done so), the Court determines that a live hearing is not necessary. *Martin v. Redden*, 34 F.4th 564, 569 (7th Cir. 2022); *see Aguilar v. Goldberg*, 770 F. App'x. 293, 294–95 (7th Cir. 2019) (unpublished) (no hearing necessary where record supported a finding of intentional misconduct).

The PLRA requires all inmates to pay the filing fee. *See* 28 U.S.C. § 1915(b)(1). The fee cannot be waived. *Butler v. Deal*, 794 F. App'x 542, 544 (7th Cir. 2020) (unpublished) (explaining that PLRA "forbids outright forgiveness of the obligation to pay the filing fee"). If an inmate is allowed leave to proceed *in forma pauperis*, the plaintiff is assessed an initial partial filing fee and subsequently required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner is directed to forward payments to the Clerk of Court each time the amount in the account exceeds $10 until the filing fees are paid. 28 U.S.C. § 1915(b)(1)-(2). These payment obligations were spelled out in each order issued by the Court granting Plaintiff leave to proceed *in forma pauperis*, including the order in this case. (*See* 12/05/23 Order, Dkt. No. 7.) Additionally, Plaintiff, and the trust fund officer at the facility having custody of him, was informed at that

14

time that Plaintiff was subject to a 100 percent collection order because he owed fees for more than five cases. (*See id.*)

As Defendants argue, Plaintiff's own deposition testimony establishes that he directed funds to other inmates' accounts multiple times to avoid paying for the lawsuits he filed. (*See* Pl.'s Dep., Dkt. No. 87-1, at 82:5-12; 85:8-10.) Plaintiff has not explained his behavior. For the sake of completeness, the Court observes that in response to a summary judgment motion in another case raising the same issue, Plaintiff stated that he diverted "$5 a few times for my hygiene products I needed." (*See Johnson v. Ramos*, No. 23-cv-4064, Dkt. No. 67, at pg. 3.) The Court found that explanation unpersuasive for the reasons set forth in its order dismissing that case as a sanction for litigation misconduct. (*See id.* at Dkt. No. 70.)

In particular, Plaintiff's contention that the Court's collection orders prevented him from obtaining needed hygiene items is incorrect. The Cook County Jail is obligated to provide basic hygiene items for pretrial detainees, *Hughes v. Cook Cnty.*, No. 18 C 5582, 2020 WL 1288887, at *4 (N.D. Ill. Mar. 17, 2020) (Kendall, J.), and Plaintiff did not explain what hygiene items he needed but did not have. Second, Plaintiff was not entitled to divert assets to avoid collection of the filing fees even if he believed it was necessary to obtain hygiene items. *See Hughes v. Anderson*, 829 F. App'x. 724, 725–26 (7th Cir. 2020) (unpublished) (inmate who diverted assets, but claimed that it was to remain eligible for a jail program for indigent inmates, was obligated to disclose this to the court "before hiding assets so it could evaluate the legitimacy of the scheme"); *see also Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016) ("[H]iding assets is not a permissible alternative to seeking the judge's assistance.")

As set forth in the Court's summary judgment order in *Johnson v. Ramos*, No. 23-cv-4064, transactions posted to Plaintiff's trust fund accounts at the Cook County Jail, and

15

subsequently in the Illinois Department of Corrections, support a conclusion that Plaintiff intentionally diverted funds from his trust fund account to avoid paying filing fees.

A review of the trust fund account statement attached to Defendant's motion for summary judgment in the *Ramos* case indicates that Plaintiff received a $60 deposit on July 31, 2022. Jail officials deducted $48 of the $60 deposit to pay for Plaintiff's filing fees in four cases.[3] (*See* Dkt. No. 62-2 at pg. 2.) Plaintiff received no further deposits for more than a year until receiving a $50 deposit on Dec. 28, 2023. (*See id.* at pg. 1.)

Plaintiff was transferred to the custody of the Illinois Department of Corrections (IDOC) in January 2024. Defendants did not provide a copy of Plaintiff's prison trust fund statement, but court staff was able to obtain a copy from Illinois River Correctional Center. *See Robertson v. French*, 949 F.3d 347, 353–54 (7th Cir. 2020) (courts can, in an oversight role, monitor a prisoner's finances "to ensure that the prisoner does not deplete his trust account in order to avoid paying the filing fee."). Plaintiff's IDOC account statement shows that he received $1,445.47 in deposits to his prison trust fund account between Jan. 1, 2024, and April 9, 2025. He received a $300.00 deposit on Feb. 1, 2024, about a month after he entered state custody, and continued to receive regular deposits to his account. No payments were collected toward Plaintiff's filing fees owed to this Court during that time.

It therefore appears that Plaintiff began diverting funds to other inmate's trust fund accounts sometime after Aug. 1, 2022, but stopped doing so after he left the Cook County Jail and was no longer subject to the 100 percent collection order.[4]

---

[3] This was more than a year before the Court issued its 100 percent collection order in this case, but Plaintiff was subject to individual collection orders for each of his cases filed to that point.

[4] The Court's standard order directs the trust fund officer at the facility where the plaintiff is housed to ensure that a copy of the order is mailed to each facility where the plaintiff is housed until the filing fee is paid. It is unclear why the Court's order did not follow Plaintiff's transfer into the IDOC.

Plaintiff's scheme to evade collection of his outstanding filing fees worked. Plaintiff has not paid anything toward the collection of his filing fees since Jan. 30, 2024, shortly after receiving a $50.00 deposit that he testified was from his cousin. (*See* Pl.'s Dep., Dkt. No. 87-1, at 83:1-8; *see also Johnson v. Dart, et al.*, No. 21-cv-0432, 06/18/24 entry reflecting that the last payment posted on 01/30/24.) Plaintiff has not paid anything at all toward the filing fee for this case.

While it appears that the Court's collection orders did not make their way to IDOC, Plaintiff received copies of each of this Court's collection orders, including the 100 percent collection order in this case, and he knew that he was required to pay 20 percent of his income each month toward each filing fee he incurred. (*See* Pl.'s Dep., Dkt. No. 87-1, at 83:20-23.) Plaintiff admittedly took affirmative steps to evade collection of these fees while in the custody of the Cook County Jail. And he took no steps to pay the filing fees upon his transfer to state custody even though he is aware that he owes fees and should have been aware that payments were not being deducted from his trust fund account. "Prisoners, not prison officials, bear ultimate responsibility for monitoring their prison accounts so that monthly payments are made when appropriate." *Campbell v. Nyklewick*, No. 05-C-481-C, 2006 WL 6087657, at *2 (W.D. Wis. May 9, 2006) (Crabb, J.) (citing *Lucien v. DeTella,* 141 F.3d 773, 776 (7th Cir. 1998) ("If in a given month the prison fails to make the required distribution from the trust account, the prisoner should notice this and refrain from spending the funds on personal items until they can be applied properly.")).

Plaintiff is no longer incarcerated, and as such is beyond the reach of the automatic collection provisions of the PLRA, 28 U.S.C. § 1915(b). *See* Ill. Dep't of Corrs., Individual in Custody Search, M19700—Johnson, Dominic, Offender Status: Parole, Parole Date: 05/23/2025,

17

located at https://idoc.illinois.gov/offender/inmatesearch.html (last visited Aug. 1, 2025).
Plaintiff owes a total of $1,987.26 in filing fees as follows: Case No. 18-cv-8225 ($71.37); 19-
cv-7631 ($148.52); 20-cv-2252 ($167.85); 21-cv-0432 ($199.96); 23-cv-1338 ($349.56); 23-cv-
1339 ($350); 23-cv-4064 ($350), and this case, 23-cv-15683 ($350).

Plaintiff's scheme to evade collection of these filing fees is sanctionable. *See Hughes*,
829 F. App'x. at 726 (sanction warranted where plaintiff admitted diverting assets to get around
filing fees). Given Plaintiff's intentional decision to divert funds from his custodial account at
the Cook County Jail so that fees were not able to be collected, the Court finds that dismissal
with prejudice is warranted. The Court has considered whether a lesser sanction is appropriate,
but given Plaintiff's deliberate and successful attempt to evade collection of the filing fees, along
with the fact that automatic collection of the filing fees from Plaintiff's account is no longer an
option, dismissal without prejudice or a monetary sanction would not be a sufficient deterrent.
*See Donelson*, 931 F.3d at 570 ("Fines would be ineffective because [plaintiff] had filed this suit
in forma pauperis; if he could not afford the filing fee, a monetary sanction would not deter
him."). Additionally, having deliberately evaded the filing fees for this case, Plaintiff "cannot
expect favorable treatment on matters of discretion." *Campbell*, 481 F.3d at 969; *see also Moran
v. Sondalle*, 218 F.3d 647, 651 (7th Cir. 2000) ("Prisoners who play games to avoid the PLRA
should not expect courts to cooperate."). For these reasons, this case is dismissed with prejudice
as a sanction for Plaintiff's litigation misconduct.

## CONCLUSION

Defendants' motion for summary judgment [86] is granted. Defendants are entitled to
summary judgment on the merits of Plaintiff's failure-to-protect claim because Plaintiff started
the fight about which he complains, and Defendants nonetheless responded reasonably to

Plaintiff's complaints. Additionally, this case is dismissed with prejudice as a sanction for litigation misconduct.

The Clerk is directed to enter final judgment and send a copy of this order to Plaintiff.  If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment.  *See* Fed. R. App. P. 4(a)(1).

**DATE: August 12, 2025**

_____
**Mary M. Rowland**
**United States District Judge**